1   Timothy R. Snowball, Cal Bar No. 317379
    tsnowball@freedomfoundation.com
2   Shella Alcabes, Cal Bar No. 267551
    salcabes@freedomfoundation.com
3   Freedom Foundation
    PO Box 552
4   Olympia, WA 98507
    Telephone: (360) 956-3482
5   Facsimile: (360) 352-1874

6   *Attorneys for Plaintiff*

7

8

9           **UNITED STATES DISTRICT COURT**
        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11  **CHRISTOPHER DEERING**, individual,

12          Plaintiff,                     Case No.: 2:21-cv-07447

13      v.                                **OPPOSITION TO DEFENDANTS'
                                           MOTIONS TO DISMISS**
14  **INTERNATIONAL BROTHERHOOD
    OF ELECTRICAL WORKERS LOCAL
15  18**, an employee organization; **CITY OF
    LOS ANGELES**, a public agency; **ROB
16  BONTA**, in his official capacity as
    Attorney General of California; **BRIAN
17  D'ARCY, GUS CORONA, MARTIN
    MARRUFO, RAFAEL LOPEZ,
18  MARTIN ADAMS, RICHARD
    HARASICK, ANDREW KENDALL,** and
19  **DAVID WRIGHT,** trustees of the Joint
    Safety and Training Institute,
20
            Defendants,
21

22

23

24  OPPOSITION TO DEFENDANTS'
    MOTIONS TO DISMISS
    NO.: 2:21-CV-07447

1

# TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ......................................................................... iii

3    INTRODUCTION ....................................................................................1

4    I.    STATEMENT OF FACTS ...................................................................3

5    II.   LEGAL STANDARDS........................................................................5

6    III.   ARGUMENT...................................................................................6

7      A.  Deering's Injuries Are Constitutional, Not Contractual ......................... 6

8      B.  All Defendants Are Subject to Section 1983 ........................................ 10

9        1.  The City Defendants are State Actors ........................................... 10

10       2.  IBEW 18 is a State Actor........................................................... 15

11         a.  IBEW 18 is a state actor under Janus and Janus II.................... 15

12         b.  IBEW 18 is a state actor under Lugar...................................... 17

13       3.  JSTI is a State Actor. ................................................................ 20

14       4.  The Attorney General is a State Actor. ......................................... 24

15     C.  State Law Cannot Restrict Section 1983 Liability for State Actors ............... 26

16     D.  Deering Presents Live Controversies to Stop Continuing Deductions, and for

17        Damages for Past Deductions...................................................... 28

18       1.  Deering Has Standing. ............................................................... 28

19         a.  Standing for First Amendment claims................................... 29

20         b.  Standing for Fourteenth Amendment claims. .......................... 31

21       2.  Deering's Claims Are Not Moot................................................... 34

22         a.  Retrospective claims are live. .............................................. 35

23                                             i

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1

    b. Prospective claims are live. ............................................................... 36

2

CONCLUSION ....................................................................................................37

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ii

24

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abood v. Detroit Bd. of Ed.,* 431 U.S. 209 (1977)...................................................8, 9

4

*ABS Entertainment, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ...................37

5

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)...................................................12

6

*Air Line Pilots Ass'n v. Miller*, 523 U.S. 866 (1998) ..............................................28

7

*Alvarez v. Smith*, 558 U.S. 87 (2009)........................................................................36

8

*Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002

9

    (9th Cir. 2003) .....................................................................................................29

10

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937

11

    (9th Cir. 2013) .....................................................................................................25

12

*Baker v. Carr*, 369 U.S. 186 (1962).........................................................................31

13

*Bd. Of Regents v. Roth*, 408 U.S. 564 (1972) ..........................................................31

14

*Belgau v. Inslee*, 843 F.2d 1163 (9th Cir. 1987)....................................... 7, 9, 10, 15

15

*Bell v. Hood*, 327 U.S. 678 (1946).............................................................................5

16

*Board of the County Comm'rs v. Brown*, 117 S. Ct. 1382 (1997)...........................14

17

*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940)...........................................31

18

*Carey v. Piphus*, 435 U.S. 247 (1978) ............................................................... 30, 32

19

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010) .......19

20

*Chicago Tchrs. Union, Loc. No. 1, v. Hudson*, 475 U.S. 292 (1986).....................33

21

*Clark v. Yosemite Cmty. College Dist.*, 785 F.2d 781 (9th Cir. 1986) ...................28

22

*Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128 (9th Cir. 2012)........25

23

iii

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS

24

NO.: 2:21-CV-07447

*Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989)............................................17

*Crouthamel v. Walla Walla Pub. Sch.*, 535 F. Supp. 3d 1025 (E.D. Wash. 2021) .32

*Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005)................................................30

*Daniels v. Williams*, 474 U.S. 327 (1986) ...............................................................33

*DePierro v. Las Vegas Police Prot. Assn. Metro, Inc.*, No., 2021 WL 4096538

 (D. Nev. Sept. 8, 2021)...........................................................................................9

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011)............................ 11, 14

*Durst v. Oregon Educ. Ass'n*, 450 F. Supp. 3d 1085 (D. Or. 2020).......................35

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) ...................................20

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................5

*Evans v. Newton*, 382 U.S. 296 (1966)........................................................... 22, 23

*Ex parte Young*, 209 U.S. 123 (1908)..................................................... 24, 25, 26

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...................................................................36

*Few v. UTLA*, No. 218CV09531JLSDFM, 2020 WL 633598

 (C.D. Cal. Feb. 10, 2020) ......................................................................................35

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

 528 U.S. 167 (2000) ..............................................................................................35

*Fuentes v. Shevin*, 407 U.S. 67 (1972)....................................................................32

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) ...................................35

*Gibson v. Berryhill*, 411 U.S. 564 (1973)...............................................................32

*Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018)........5

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) ...................................................................25

iv

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

*Heath v. Cleary*, 708 F.2d 1376 (9th Cir. 1983)......................................................28

*Honey v. Distelrath*, 195 F.3d 531(9th Cir. 1999)..................................................27

*Hudson v. Palmer*, 468 U.S. 517 (1984)................................................................32

*Hunt v. City of Los Angeles*, 638 F.3d 703 (9th Cir. 2011) ....................................29

*Hydrick v. Hunter*, 466 F.3d 676 (9th Cir. 2006) ......................................................5

*Ingraham v. Wright*, 430 U.S. 651 (1977)........................................................ 31, 32

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)......................................22

*Jackson v. Napolitano*, No. 19CV1427- LAB (AHG), 2020 WL 5709284

  (S.D. Cal. Sept. 23, 2020)......................................................................................35

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) .................................................... passim

*Janus v. AFSCME*, 942 F.3d 352 (7th Cir. 2019) (*Janus II*)............................. 16, 17

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011 (9th Cir. 2010) .....37

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) ......................34

*Knight v. Kenai Peninsula Borough School District*, 131 F.3d 807

  (9th Cir. 1997) ......................................................................................................28

*Laird v. ULTA.*, No. 2:21-cv-02313 (C.D. Cal. filed March 16, 2021)...................35

*Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851 (9th Cir. 1985) ............37

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) ..............................................26

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)....................................................29

*Lopez v. Dep't of Health Servs.*, 939 F.2d 881 (9th Cir. 1991) ...............................20

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) ..................................................29

*Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982) .......................................... passim

v

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................28

*Marsh v. State of Ala.*, 326 U.S. 501 (1946)...............................................................23

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ...............................................5

*McNeese v. Board of Ed. for Community Unit School Dist.* 187,

   373 U.S. 668 (1963) ...............................................................................................28

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)...................................30

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). 10, 12, 13

*Monroe v. Pape*, 365 U.S. 167 (1961) ................................................................ 27, 28

*Moore v. East Cleveland*, 431 U.S. 494 (1977).........................................................34

*Moore v. Liszewski*, 838 F.3d 877 (7th Cir. 2016).....................................................36

*Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000) ...........................31

*Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013) ................................................. 19, 20

*Orloff v. Cleland*, 708 F.2d 372 (9th Cir. 1983 ........................................................31

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,

   551 U.S. 701 (2007) ...............................................................................................36

*Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496 (1982)...........................28

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...............................................13

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004)........25

*Publ Utilities Commission of District of Columbia v. Pollak*,

   343 U.S. 451 (1952) ...............................................................................................22

*Quezambra v. United Domestic Workers of America AFSCME Local 3930*

   F.Supp.3d 695, 706 (C.D. Cal. 2020)....................................................................15

vi

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476

   (9th Cir. 2018) ........................................................................................33

*Reno v. Flores*, 507 U.S. 292 (1993) .........................................................33

*Sagana v. Tenorio*, 384 F.3d 731(9th Cir. 2004) .....................................33

*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) .........................31

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989).........31

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). .....................................29

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004). .......31

*Starr v. Baca*, 652 F.3d 1216 (9th Cir. 2011) ............................................5

*Sweeney v. Madigan*, 359 F. Supp. 3d 585 (N.D. Ill. 2019)....................25

*Terry v. Adams*, 345 U.S. 461 (1953) .......................................................22

*Thomas v. County of Riverside*, 763 F.3d 1167 (9th Cir. 2014)..............11

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012)............. 13, 18

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. (1988) ........... 16, 17

*United States v. Salerno*, 481 U.S. 739 (1987).........................................33

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)..................................36

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)...................24

*Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008) ..........................12

*Washington v. Glucksberg*, 521 U.S.702 (1997) ......................................33

*West v. Atkins*, 487 U.S. 42 (1988) ................................................... 10, 27

**Statutes**

42 U.S.C. § 1983 (Section 1983) ..................................................... passim

vii

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Cal. Gov't Code § 1157.12 ................................................................. passim

Cal. Pen. Code § 115 ............................................................................27

**Other Authorities**

City Administrative Officer, *What is the Office of the CAO?*,

    https://cao.lacity.org/caoabout.htm. ....................................................13

*Employee Relations*, https://cao.lacity.org/erd/index.htm .......................................13

Maura B. Grealish, *A Dollar for Your Thoughts: Determining Whether Nominal*

    *Damages Prevent an Otherwise Moot Case from Being an Advisory Opinion*, 87

    Fordham L. Rev. 733, 739 (2018) ........................................................30

William Baude & Eugene Volokh, *Compelled Subsidies and the First Amendment*,

    132 Harv. L. Rev. 171, 201 (2018) .......................................................18

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................5

Federal Rule of Civil Procedure 12(b)(6) .................................................5, 23

viii

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    **INTRODUCTION**

2        Plaintiff Christopher Deering's 2005 dues' authorization card with Defendant

3    International Brotherhood of Electrical Workers Local 18 (IBEW 18) specifically

4    provided that he could end his dues' deduction authorization any time without

5    restriction. But even after Deering exercised this right by submitting a written opt-

6    out in August 2020, IBEW 18 continued demanding that Defendant, City of Los

7    Angeles, through the Department of Water and Power (the City Defendants), under

8    the authority provided it by Cal. Gov't Code § 1157.12, take his money for use by

9    IBEW 18 in objectionable political speech. The Defendants had ***no contractual,***

10   ***consensual, or constitutional basis*** to take even a single penny of Deering's money.

11   Yet, their unconstitutional conduct continued for an *additional eight months* past the

12   point when Deering withdrew his authorization.

13       Further, in October 2018 the City Defendants and IBEW 18 began jointly

14   deducting $15.00 from each of Deering's paychecks to fund the speech of an entity

15   called the "Joint Safety and Training Institute" (JSTI). There is *no mention* of JSTI

16   in Deering's 2005 agreement with IBEW 18, and thus no hint of his having

17   contractually authorized or consented to these deductions. This trust fund, which is

18   managed jointly by the City Defendants and IBEW 18, *continues* to deduct money

19   from Deering's lawfully earned wages from every paycheck with ***no contractual,***

20   ***consensual, or constitutional basis***. This unconstitutional conduct has continued for

21   *eighteen months* past the point at which Deering withdrew any purported

22   authorization contained in his IBEW 18 card.

23                                                              1

24

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    The Defendants' motions to dismiss should be denied.

2    First, the deprivations Deering alleges are based on constitutional violations,

3    not contractual breaches. Unlike the plaintiff in *Belgau v. Inslee*, Deering did not

4    contractually authorize the Defendants to take his lawfully earned wages for

5    purported dues past the point at which he canceled his authorization. Nor did he *ever*

6    authorize the Defendants to take his money for JSTI's speech. Thus, his case is

7    directly in line with *Janus*, not *Belgau*.

8    Second, all of the Defendants are subject to 42 U.S.C. § 1983 (Section 1983).

9    Without contractual authorization or affirmative consent to take and spend Deering's

10    money, their only basis was to act in partnership under Section 1157.12 and the

11    MOU, under a system defended by Defendant Rob Bonta (the Attorney General).

12    Third, the Defendants' argument that they should not be considered state

13    actors because they *may have* violated *some other* state law is without merit.

14    Whether the Defendants violated another state law has no impact on their clearly

15    acting under color of state law, namely Cal. Gov't Code § 1157.12 (Section 1157.12),

16    which allows them to access Deering's money without contract or consent.

17    Last, Deering's retrospective and prospective claims present live

18    controversies because the Defendants have *never returned* Deering's wrongfully

19    seized money and *continue to take more* from each paycheck. Deering's claims for

20    monetary and nominal damages, and prospective relief, are properly before this

21    Court and are fully capable of, and merit, judicial redress under Section 1983.

22

23                                    2

24                                    

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1

## I.    STATEMENT OF FACTS

2

The Los Angeles Department of Water and Power, an agency of the City of

3

Los Angeles, is a public utility company that services Los Angeles area residents.

4

Compl. at ¶ 16. As a Customer Service representative with the Department,

5

Deering's primary responsibility is to respond to phone inquiries regarding power

6

and water outages and other service-related issues. *Id.* at ¶¶ 18-19. When Deering

7

began employment with the Department in 2005, he executed an IBEW 18

8

membership agreement and dues authorization. *Id.* at ¶ 20. This authorization card

9

contained no restriction on ending Deering's membership and deductions to IBEW

10

18 at any time without restriction. *Id.* at ¶ 24; Exhibit A. All that was required was

11

for Deering to cancel the authorization "in writing." *Id.* at ¶ 25.

12

The "Joint Safety Institute" trust was created by the Department and IBEW

13

18 in 2000, purportedly for the benefit of Los Angeles Department of Water and

14

Power employees represented by IBEW 18. *Id.* at ¶ 50. The "Joint Training Institute"

15

trust was created by the Department and IBEW 18 in 2002, purportedly to improve

16

Department employee productivity and work life. *Id.* at ¶ 51. Between 2002 and

17

2013, these trusts operated in secret with virtually no public accounting. *Id.* at ¶ 53.

18

The situation deteriorated to such a point that Los Angeles Mayor Eric Garcetti and

19

City Controller Ron Galperin's pressed for an audit of the trusts' expenditures,

20

alleging potential misuse of trust assets by the trustees and administrators. *Id.* at ¶

21

56. The audit uncovered examples of the misuse of trust funds. *Id.* at ¶ 58.

22

23

24

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

3

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

In March 2019, the funds were combined into the "Joint Safety and Training Institute." *Id.* at ¶ 60. Exhibit G. The JSTI Board of Trustees is jointly appointed by the Department and IBEW 18, with equal representation for both entities. *Id.* at ¶ 62. The JSTI trustees representing the Department and IBEW 18 are fiduciaries who have the exclusive authority and discretion to control and manage the assets, operation, and administration of the JSTI. *Id.* at ¶ 63. In October 2018, the Department and IBEW 18, acting jointly, began deducting $15.00 from Deering's lawfully earned wages and remitting it to JSTI without his contractual authorization or affirmative consent. *Id.* at ¶ 64. These deductions continue to this day. *Id.* at ¶ 67. However, Deering's 2005 IBEW 18 agreement did not so much as mention let alone authorize the deduction of any funds to JSTI. *Id.* at ¶ 66.

On August 3, 2020, Deering sent a written letter to IBEW 18 requesting the immediate cancellation of his membership, and the end of all dues and fee deductions from his lawfully earned wages, thus satisfying the "in writing" requirement to end both the dues and JSTI deductions. *Id.* at ¶¶ 33-34; Exhibit B. But both deductions continued without Deering's contractual authorization or affirmative consent. *Id.* at ¶¶ 80-97. From August 2020, when he effectively resigned his membership and authorization, to April 2021, when the unauthorized dues' deductions finally ceased, the Department and IBEW 18 took approximately $778.50 of Deering's lawfully earned wages without his contractual authorization or affirmative consent. *Id.* at ¶ 49. The $15.00 deductions for JSTI, which Deering also

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

neither contractually authorized nor affirmatively consented to, continue to be taken from each of his paychecks, *id.* at ¶¶ 73-79, totaling approximately $600.00, so far.

As of March 7, 2022, no money for either the purported dues' deductions for IBEW 18's speech, or deductions for JSTI's speech, have been refunded to Deering from any of the Defendants. Deering's claims for retrospective and prospective relief are live, justiciable, and capable of redress by this Court under Section 1983.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), dismissal for lack of subject-matter jurisdiction is warranted only "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial" or "where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–683 (1946); *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018). When reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), a court's limited task is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Hydrick v. Hunter*, 466 F.3d 676, 686 (9th Cir. 2006).

On consideration of a motion to dismiss, all assumptions of factual truth must favor the plaintiffs, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), courts must draw all reasonable inferences in the plaintiffs' favor, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011), and plaintiffs' legal theories need only be "plausible" for the case to proceed. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

## III.  ARGUMENT

### A. Deering's Injuries Are Constitutional, Not Contractual

Mark Janus was a non-union member who never authorized dues deductions, contractually or otherwise, from his lawfully earned wages to fund union speech. Nor did he provide any means of affirmative consent for these deductions. Yet his state employer deducted funds from his lawfully earned wages and gave them to AFSCME, a public employee union, without his consent. This was a violation of his First Amendment rights. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). The Court found that, "[n]either an agency fee *nor any other payment* to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed." *Id.* (emphasis added).

Here, the Defendants' actions are nearly identical to the facts before the Court in *Janus* regarding the purported dues taken from Deering after August 3, 2020, for eight months, and the additional $15.00 fee for JSTI that continues to be taken. Mark Janus was forced by the state to pay agency fees; Deering was forced by the City Defendants and IBEW 18 to pay $778.50 after he revoked his authorization according to that authorization's terms. Deering's money is also *still* being taken and given to JSTI for its political speech without his contractual authorization or affirmative consent. So far, this amounts to $600.00 in unauthorized fees to JSTI, *even after he objected* and made his lack of affirmative consent clear.

6



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1        Like Mark Janus, Deering is a non-member whose money was taken by the

2  state with neither contractual authorization nor affirmative consent in violation of

3  the First Amendment. While Deering once authorized deductions for dues, his 2005

4  agreement with IBEW 18 allowed him to end the authorization at any time, which

5  he effectively did in August 2020. In terms of the JSTI deductions, which continue

6  to be withdrawn from each of Deering's paychecks, his agreement with IBEW 18 is

7  completely silent. This puts Deering's case squarely within *Janus*. No contract, no

8  consent, no excuse for taking Deering's money over his express objections. Deering

9  is not attempting to constitutionalize a contract dispute. Instead, he alleges the same

10  First Amendment injuries, and seeks the same protection, as Mark Janus did before

11  the Supreme Court. This Court should provide it.

12        The Defendants invoke the *Belgau* case like a mystical talisman that puts all

13  constitutional questions regarding deductions from non-consenting public employee

14  wages for unions beyond dispute; apparently even when the purported contract is

15  abrogated under its own terms. *Belgau v. Inslee*, 843 F.2d 1163 (9th Cir. 1987).

16  Deering was not under any contractual terms that may have required him to continue

17  making dues or non-dues related or political payments to the union without

18  affirmative consent beyond the terms of his agreement. Thus, *Belgau* is inapposite,

19  because it is one thing to claim that a public employee signing a contract with a

20  union is bound by the terms of that agreement. 975 F.3d at 950. But it is quite another

21  to claim that an employee should be bound by an abrogated agreement, or subject to

22

23                           7
   OPPOSITION TO DEFENDANTS'
   MOTIONS TO DISMISS

24     NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

continued deductions beyond that agreement's terms. The Defendants claim both here, defying law and common sense.

When Deering withdrew consent for the deductions from his lawfully earned wages for the deductions for JSTI, Compl. at ¶ 33; Exhibit B, those payments should have immediately ceased under the terms of his agreement with IBEW 18, which never so much as mentioned this additional deduction, *id.* at ¶¶ 45-46. Instead, the State Defendants have continued to deduct money from Deering's lawfully earned wages without contractual authorization or affirmative consent, remitted the money to JSTI, after which the money was spent on objectionable political speech. *Id.* at ¶ 68. This unconstitutional action is still occurring even after Deering filed this lawsuit, a more than direct way to make his preferences known. Even if an argument can be made that spending purported dues can go towards funding collective bargaining and other activities germane to exclusive representation, no such argument can be made for the money taken for IBEW 18 and the State Defendants joint venture, JSTI. In fact, these JSTI deductions are identical to the union shop arrangements requiring mandatory membership which were unconstitutional even under *Abood* whether it is $1.00, forty-three cents, or a single penny. *Abood v. Detroit Bd. of Ed.,* 431 U.S. 209, 235, (1977), *overruled by Janus*, 138 S. Ct. at 2448 (First Amendment prohibits employers from requiring employees "to contribute to the support of an ideological cause he may oppose as a condition of holding a job.").

Deering also withdrew consent for his wages to be taken as purported membership dues. JSTI, Compl. at ¶ 33; Exhibit B. Under the terms of his 2005

8

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

agreement with IBEW 18, which contained no restriction on his ability to end the deduction of his membership dues at any time, Deering became a non-member when he sent his opt-out letter in August 2020, and the deductions should have immediately ceased. *Id.* at ¶¶ 45-46. But these deductions, and IBEW 18's spending on political speech using the money, continued unabated for another eight months. *Id.* at ¶ 49. Under *Janus*, even the *attempt* to take this money without contractual authorization or affirmative consent is a cognizable First Amendment violation. *Janus*, 138 S. Ct. at 2486 ("[N]or may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay.").

The City Defendants' reliance on *DePierro v. Las Vegas Police Prot. Assn. Metro, Inc*., No., 2021 WL 4096538, at *3-4 (D. Nev. Sept. 8, 2021), which is not binding on this Court, avoids the simple fact that Deering's dues authorization *expressly permitted* him to cancel his membership and authorization by written notice without restriction. Additionally, this Court should be highly skeptical of relying on *DePierro* for the disturbing conclusion that any employee who *at some point* joined a union and authorized dues' deductions is *powerless* to withdraw that authorization so long as the employer and union continue to extend their collective bargaining agreement, no matter the terms of their authorization, simply because everyone, union member or not, in a bargaining unit is covered by the MOU.

This unsupportable assertion goes well beyond the scope of *Belgau* and would have been unconstitutional even under *Abood*, 431 U.S. 209. Such a proposition becomes especially disturbing on the context of the deductions for JSTI, which are

9

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

not even reflected on Deering's 2005 authorization. A union cannot require employees to contribute money to the Democratic or Republican parties as a condition of employment; they also cannot take money for their own jointly operated pet projects, like JSTI, absent contractual authorization or affirmative consent. Such a proposition runs counter to both the *Janus* and *Belgau* cases and stretches the First Amendment prohibition on compelled speech to the breaking point.

**B. All Defendants Are Subject to Section 1983**

1. The City Defendants are State Actors

To establish that the City Defendants are subject to Section 1983, all the Court need ask is whether they act under color of state law, which they clearly do. *See* Section 1157.12; *West v. Atkins*, 487 U.S. 42, 50 (1988) ("[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Specifically, local governments and municipal agencies, like the City Defendants, "can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

Municipal liability under Section 1983 requires a plaintiff prove four elements: 1) that they were deprived of a constitutional right; 2) the municipality had a policy; 3) the policy amounted to a deliberate indifference to the Plaintiff's constitutional right; and 4) "the policy [was] the moving force behind the

10

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1  constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

2  2011). The City Defendant's conduct in this case as alleged in Deering's complaint,

3  and assumed to be true, meets and exceeds these requirements.

4         First, and as discussed at length below, Deering was deprived of both his First

5  Amendment right against compelled speech and Fourteenth Amendment rights to

6  procedural and substantive due process. The City Defendants physically took, and

7  continue to take, Deering's lawfully earned wages and diverted them to IBEW 18

8  and JSTI for use in objectionable political speech without either contractual

9  authorization or affirmative consent. This compelled speech violated and continues

10  to violate the First Amendment. These deprivations occurred under a state statute,

11  Section 1157.12, and an MOU negotiated between the City and IBEW 18, that

12  provides Deering and other similarly situated public employees *none* of the required

13  elements of procedural due process, all under an inherently arbitrary system in which

14  IBEW 18, and IBEW 18 alone, is empowered to control the exercise of employees'

15  First Amendment rights. Deering was deprived of constitutional rights.

16         Second, the City Defendants did not take Deering's money for IBEW 18 and

17  JSTI based upon a clerical error, mistake, or because they were compelled by Section

18  1157.12. Instead, they acted pursuant to a jointly negotiated and agreed upon policy

19  as they laid out in the MOU between the City and IBEW 18. This requirement can

20  be satisfied not only where, as here, a local government acts "pursuant to an

21  expressly adopted official policy," *see Thomas v. County of Riverside*, 763 F.3d

22  1167, 1170 (9th Cir. 2014) (per curiam), but also when the unwritten applicable

23
24

11

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

policy, ordinance, regulation, or decision is "so permanent and well settled as to constitute a 'custom or usage' with the force of law," *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68 (1970); *see also Monell*, 436 U.S. at 691 (unwritten policy or custom can be so "persistent and widespread" that it constitutes a "permanent and well settled" practice). While there is a state statute at issue in this case that clothes IBEW 18 and JSTI with the authority of the state sufficient to meet the requirements of Section 1983, it is a permissive statute that functions to provide protocols *only* when the City Defendants, as they have here, exercise discretion by negotiating a contract with a given union. *See* Cal. Gov't Code § 1157.12. Under Section 1157.12, "[p]ublic employers…that provide for the administration of payroll deductions" are required to do so pursuant to certain procedures.

In other words, the City Defendants are required to follow statutory guidelines *only after* agreeing to the payroll deductions in their contracts with IBEW 18. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) ("if a municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy."). There are also the many discretionary policies contained the jointly negotiated contract between the City Defendants and IBEW 18 not compelled by the statute, and which caused direct harm to the constitutional rights of Deering, including maintaining a list of employees signed authorizations provided by IBEW 18 to the City Defendants, and the policy that authorized dues may not be withdrawn until a specified window period. Neither of these

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

discretionary components of the City Defendants' MOU with IBEW 18 is required by Section 1157.12 or any other state law.

Additionally, the City Defendants' policy is established through the Employee Relations Division of the Office of the City Administrative Officer (CAO). The CAO represents the City Defendants in labor negotiations, including with IBEW 18. *See* City Admin. Officer, *Employee Relations*, https://cao.lacity.org/erd/index.htm. The CAO is appointed by and directly answerable to Los Angeles City Council. *See* City Administrative Officer, *What is the Office of the CAO?*, https://cao.lacity.org/caoabout.htm. Any MOU, including the one at issue in this case, is ratified and signed by the CAO acting as an agent of the city with final policy-making authority, subjecting the City Defendants to liability for deprivations occurring pursuant to that policy. The City Defendants' policy in this case to enter into an MOU with IBEW 18, effectuated through the CAO, was "a deliberate choice to follow a course of action ... by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Of course, while the MOU was effectuated through the actions of the CAO, Deering's injuries result from the actions taken pursuant to the MOUs, not the MOUs themselves.

Third, the deliberate indifference requirement for *Monell* liability can be met by showing that a public entity "failed to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012). Since *Janus*, the First Amendment clearly forbids taking a public

13

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

sector employee's wage and giving them to a union unless certain conditions are met. Not enforcing these conditions should be read as a clear indifference to the requirements of the *Janus* case. Here, the City Defendants long-running systemic failure to implement proper procedural safeguards to prevent the deprivation of public employees' First and Fourteenth Amendment rights, like the deprivations suffered by Deering, is one of the primary gravamens of Deering's complaint. Compl. at ¶¶ 80-108. The City Defendants "continued adherence to an approach that they know or should know has failed to prevent [unconstitutional] conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *See Board of the County Comm'rs v. Brown*, 117 S. Ct. 1382, 1392 (1997).

Lastly, the City Defendants' policy in this case to aid IBEW 18 and JSTI in the seizure and use of Deering's lawfully earned wages without his contractual authorization or affirmative consent was the moving force behind the deprivations of Deering's constitutional rights. *See Dougherty*, 654 F.3d at 900. The City Defendants have been on notice since at least June of 2018 of the First Amendment rights afforded to Deering and other public employees by the *Janus* decision. Yet they continued to take Deering (and many other public employees) lawfully earned wages for purported dues without contractual authorization or affirmative consent for eight additional months after what his agreement allowed, and now continues to take money for JSTI without *any* authorization whatsoever, and over Deering's express objections. These deductions were taken by the City Defendants with

14

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   deliberate indifference to Deering's constitutional rights pursuant to their MOU with

2   IBEW 18 and were the moving force behind the deprivation of Deering's rights.[1]

3        The City Defendants argument that their actions were merely "ministerial"

4   and thus they are not state actors puts the "cart before the horse." *Quezambra v.*

5   *United Domestic Workers of America AFSCME Local 3930*, 445 F.Supp.3d 695, 706

6   (C.D. Cal. 2020), relied upon exclusively by the City Defendants, makes this exact

7   error in the order of its analysis. The "ministerial" question arises only within the

8   context of the *Lugar* test and determining whether a private actor is a state actor. *See*

9   *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982). Whether *government officials* are

10  state actors is a separate analysis from whether IBEW 18 is a state actor. This Court's

11  analysis of whether IBEW 18 is a state actor (it is), has no effect on whether the City

12  Defendants are state actors. Each must be defendant must be analyzed separately,

13  under distinct tests, as required by Section 1983.

14        2.  IBEW 18 is a State Actor

15             *a.  IBEW 18 is a state actor under Janus and Janus II.*

16        In this case, IBEW 18 has no contract with Deering to enforce past the point

17  at which he ended the authorization for dues' deductions. As such, *Belgau*'s finding

18  that a union enforcing a private membership and dues' authorization agreement is

19  not a state actor under Section 1983 is inapplicable. Instead of a private contract,

20  IBEW 18 can cite only Section 1157.12 and its MOU with the City Defendants to

---

[1] The MOU being the "moving force" behind the City Defendants' actions does not affect the challenged state statute being the primary authority by which IBEW 18 effected the resulting deprivations, satisfying the state action requirement for IBEW 18, as explained below.

15

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

stake any claim whatsoever to any portion of Deering's lawfully earned wages. As such, the closest analogy to Deering case is the *Janus* cases, under which IBEW 18 is undoubtedly a state actor subject to liability under Section 1983.

*Janus* made clear that government officials *and* unions are prohibited from exacting fees or any other payments from non-members, like Deering, without affirmative consent. *Janus*, 138 S. Ct. at 2486 (despite being a private organization, union was held to be a state actor that could violate civil rights under § 1983). Hence in *Janus*, the Supreme Court never questioned that unions are state actors capable of violating the First Amendment. After all, if the deductions and the political speech upon which they were expended were not state action, a prior constitutional waiver would not be required. The same is especially true in cases like the instant one in which the underlying state action is identical to that in *Janus*: government officials seized the lawfully earned wages of Deering, a non-member who has not authorized deductions, on behalf of IBEW 18, all under the authority provided by Section 1157.12 and an MOU. Any argument that IBEW 18's conduct is not state action is impossible to reconcile with the Court's holding that the state-enabled process in *Janus* violated the First Amendment rights of non-consenting employees.

The Seventh Circuit's analysis of these issues in *Janus v. AFSCME*, 942 F.3d 352, 361 (7th Cir. 2019) (*Janus II*) is also directly on point. Relying on *Lugar*, 457 U.S. at 935 and *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988), the Seventh Circuit held that it was "sufficient for the union's conduct to amount to state action" that a state "deducted…fees from the employees' paychecks

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    and transferred that money to the union, which then spent it on…activities pursuant

2    to the collective bargaining agreement." *Janus II*, 942 F.3d at 361. Hence,

3    "AFSCME was a joint participant with the state" and the receipt of money from

4    employees' wages was "attributable to the state." *Id.* Again, the same is true here.

5    Through the challenged state statute and MOU with the City Defendants, IBEW 18

6    claimed a special right provided by Section 1157.12, to seize Deering's lawfully

7    earned wages for use in political speech without the contractual authorization or

8    affirmative consent. In cases like Deering's where "private parties make use of state

9    procedures with the overt, significant assistance of state officials, state action may

10    be found." *Pope*, 485 U.S. at 486.

11        *b. IBEW 18 is a state actor under Lugar.*

12        Taking a closer look at the *Lugar* test also clearly shows that IBEW 18 is a

13    state actor subject to Section 1983 liability. Private actors like IBEW 18 act under

14    "color of state law" and are subject to liability under Section 1983 when the two

15    prongs of the *Lugar* test are satisfied. *Collins v. Womancare*, 878 F.2d 1145, 1151

16    (9th Cir. 1989). IBEW 18's conduct meets these standards.

17        Under the first prong, the "state policy requirement," state action is present

18    where "the claimed deprivation has resulted from the exercise of a right or privilege

19    having its source in state authority." *Lugar*, 457 U.S. at 939. Here, the state policy

20    requirement is more than satisfied because the state statute, Section 1157.12, sets out

21    the applicable state policy, as implemented in the MOU. As noted, the City

22    Defendants' seizure and use of Deering's lawfully earned wages without his

17

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

contractual authorization or affirmative consent on behalf of IBEW 18 occurred through the authority provided by Section 1157.12. Deering never authorized the collection of supposed union dues beyond August 2, 2020, and never authorized the deduction of fees for JSTI at all. But for the authority granted it by Section 1157.12, as IBEW 18 bargained to implement in the MOU, IBEW 18 would have no ability to collect on its alleged claim to any portion of Deering's lawfully earned wages. The state policy in this case is thus the same as that in *Lugar*: a state-created "system whereby state officials will attach property on the ex parte application of one party." *Lugar*, 457 U.S. at 942; *see also* William Baude & Eugene Volokh, *Compelled Subsidies and the First Amendment*, 132 Harv. L. Rev. 171, 201 (2018) ("[S]tatutes authorizing the collection of [dues or fees] are [] state action, just as in *Lugar*."). Rather than the alleged private misuse of a state statute, the challenged state statute in this case operates *precisely as it is designed* to operate by empowering IBEW 18 to control the exercise of the First Amendment rights of employees like Deering.

Under the second *Lugar* prong, the "state actor requirement," state action is present where "'private parties…may be appropriately characterized as 'state actors.'" *Lugar*, 457 U.S. at 939. This characterization may be determined through considering four tests articulated by the Supreme Court: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). Both the joint action and government nexus tests are satisfied by IBEW 18's actions in this case.

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

A joint action between a state and private party may be found either when the government (1) "affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party," or (2) "otherwise has so far insinuated itself into a position of interdependence with the non-governmental party." *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013). It is difficult to conceive of situation, short of sending armed state agents to physically collect the money from a person's home, in which the state could do more to affirm, authorize, encourage, or facilitate unconstitutional conduct than this case. Lacking Deering's contractual authorization or affirmative consent, the primary basis for the authority to take Deering's money is provided solely by Section 1157.12. This statute, in addition to the MOU jointly negotiated and authorized by the City Defendants and IBEW 18, empowers the Defendants 18 to work in concert to affect the deprivations Deering claims. Just as in *Janus*, where the state's deductions of agency-fees from Mark Janus's pay was unquestioningly state action, here the state's deduction of dues from Deering's lawfully earned wages after his contractually proper resignation, is unquestioningly state action. Section 1157.12 facilitates the collection of money from employees for unions because it requires the employer to take money from an employee at the direction of the union. The problem is that it enables those same unions to seize and spend that money without the necessary authorization or consent. This is far more than "mere approval or acquiescence." *Caviness v. Horizon Cmty. Learning Ctr., Inc*., 590 F.3d 806, 817 (9th Cir. 2010). It is direct aid and enabling.

19



FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

The same is true of the government nexus test. "[A] sufficiently close nexus between the State and the challenged action of the regulated entity," *Ohno*, 723 F.3d at 984, n.13, is established where the "claimed deprivation resulted from exercise of a right or privilege having its source in state authority," *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 23 (9th Cir. 1991) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991)). Again: but for Section 1157.12, defended as perfectly constitutional by the Attorney General, IBEW 18 would have no ability to collect on any allegedly claimed portion Deering's lawfully earned wages. Section 1157.12 is a state statute giving the City Defendant authority to exercise a union privilege to have dues taken from public sector employee wages, which system authorizes thousands of dues payments from wages of union members.

### 3. JSTI is a State Actor.

Having established the state actor status of both the City Defendants and IBEW 18, the status of JSTI as a state actor subject to Section 1983 is a natural corollary. JSTI was created by the City Defendants and IBEW 18, Compl. at ¶ 60, is jointly operated by the City Defendants and IBEW 18, with equal representation for both entities on the board, *id.* at ¶ 62. JSTI continues to receive $15.00 from each of Deering's paychecks *from* the City Defendants, as authorized by IBEW 18 without Deering's contractual authorization or affirmative consent. *Id.* at ¶¶ 66-68. The joint relationship creating and operating JSTI by the City Defendants and IBEW 18 is more than enough to satisfy the *Lugar* standards.

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

First, the "state policy requirement," is met because "the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Lugar*, 457 U.S. at 939. Again, and identical to the analysis of IBEW 18 above, but for the authority granted it by Section 1157.12, which sets out the applicable state policy, JSTI would have no ability to collect any portion of Deering's lawfully earned wages, or to spend his money on political speech without contractual authorization or affirmative consent. This state-created "system whereby state officials will attach property on the ex parte application of one party," *Lugar*, 457 U.S. at 942; *see also supra* Baude & Volokh, enables JSTI's unconstitutional deprivations. JSTI's speech, like a union's, is inherently political because it is a jointly operated entity between state actors and receives funds as authorized by an agreement between the City Defendants and IBEW 18. *See Janus*, 138 S. Ct. at 2473 ("When a large number of employees speak through their union, the category of speech that is of public concern is greatly enlarged, and the category of speech that is of only private concern is substantially shrunk."); *id.* at 2475 ("public union activities concern matters of great public importance.").

For all intents and purposes, there is no substantive difference between the speech of an entity jointly operated by the City Defendants and IBEW 18 and the speech of a union itself under *Janus*. The Defendants attempted misdirection pointing to the City Defendants' seizure of Deering's lawfully earned wages without contractual authorization or affirmative consent as the source of Deering's alleged harm ignores the entirely separate and actionable harm to his First Amendment rights

21

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

resulting from those funds then being spent by JSTI without similar authorization or consent. This spending of Deering's wages by JSTI, both generally and specifically on political topics, Compl. at ¶¶ 62-72, is a continuing direct injury to his First Amendment right against compelled speech, all occurring without the benefit of procedural or substantive due process. JSTI is a state actor.

Second, JSTI satisfies the public function test for the "state actor" requirement. Under the "public function" test, state action may be found "in the exercise by a private entity of powers traditionally reserved to the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). In *Evans v. Newton*, 382 U.S. 296 (1966), a tract of land was devised to the mayor of a city in Georgia to be used as a park and managed by a state board. *Id.* at 297-98. To avoid state association, the mayor renamed the city as the trustee for the park. *Id.* at 298. Nevertheless, the court held that due to the public nature of the park, it had to be regarded as a public entity subject to the strictures of the Fourteenth Amendment. *Id.* at 302 ("[T]he predominant character and purpose of this park are municipal."). Where, as here, "private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans*, 382 U.S. at 299; *see also Terry v. Adams*, 345 U.S. 461, 470 (1953) (privately operated elective process's character and purpose was municipal); *Public Utilities Commission of District of Columbia v. Pollak*, 343 U.S. 451, 462 (1952) (privately operated transit system's character and

22

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1  purpose was municipal); *Marsh v. State of Ala.*, 326 U.S. 501, 509 (1946) (privately

2  operated town streets character and purpose was municipal).

3       The Defendants characterization of JSTI as entirely private, despite its clear

4  reliance on and benefit from Section 1157.12 and public function, is without merit.

5  JSTI is purportedly tasked with ensuring the on-the-job safety of City and

6  Department employees, a function traditionally reserved to the government and

7  whose character and purpose is inherently municipal in nature. Given the procedural

8  posture of this case under Federal Rule of Civil Procedure 12(b)(6), the Court must

9  assume that Deering's allegations on this point are true. Where, as here, "the

10 tradition of municipal control had become firmly established, [the Court] cannot take

11 judicial notice that the mere substitution of trustees instantly" transfer JSTI "from

12 the public to the private sector." *Evans*, 382 U.S. at 301. JSTI's role as a state actor

13 is based on far more than just the appointment of its board members by state actors,

14 the City Defendants and IBEW 18, respectively, and its clear public function.

15      JSTI's actions also satisfy the joint action and government nexus tests. Section

16 1157.12 empowers JSTI to benefit from the concerted actions of the City Defendants

17 and IBEW 18 to seize Deering's lawfully earned wages without contractual

18 authorization or affirmative consent. Where, as here, a "procedural scheme created

19 by the statute obviously is the product of state action" and "a private party's joint

20 participation with state officials in the seizure of disputed property is sufficient to

21 characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."

22 *Lugar*, 457 U.S. at 941-42. After all, under the agreement establishing JSTI executed

23

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

24

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

by the City Defendants and IBEW 18, JSTI's purpose was to "promote [] joint labor-management activities designed to improve labor management relations and communications with respect to issues of health, safety, and training." City Ex. 4. This purpose includes working hand-in-hand with the City Defendants to aid with employee operations, a clear partnership with the state. *Id.* JSTI is a state actor.

4. The Attorney General is a State Actor.

The Attorney General defends the system in California whereby a statute, Section 1157.12, authorizes the City Defendants to bargain with IBEW 18 and take employee wages without contractual authorization or affirmative consent. Deering challenges this system as equivalent to that in *Janus*. But even if the Court disagrees with this clear equivalency, there should be no question that the Attorney General is a proper party to his constitutional challenge.

Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to the Eleventh Amendment bar on seeking damages against state's applies to suits seeking equitable relief against state officials alleged to enforce state laws that conflict with a provision of U.S. Constitution. To determine whether an official meets this standard, courts conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Both are present here.[2] First, and obvious from the face of his complaint, Deering alleges the

---

[2] Even the nominal damages claim against the Attorney General discussed fully below, which functions as a form of non-compensatory relief akin to a declaratory judgement, is allowed under the 11th Amendment.

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

ongoing violation of federal law. Compl. at ¶¶ 80-125. Second, the Attorney General is sufficiently connected with those ongoing violations. Under *Ex parte Young*, a state official's enforcement role need not be set out in the statute itself; the connection to enforcement may come from a different source, including "the general law." *Id.* at 157. All that is required is "some connection" that is "fairly direct," *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (enforcement authority is a sufficiently direct connection); *see also Sweeney v. Madigan*, 359 F. Supp. 3d 585, 592 (N.D. Ill. 2019) (Illinois Attorney General properly named in post-*Janus* lawsuit seeking recovery of unconstitutionally collected fees), between the state official and enforcement of the act, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919-20 (9th Cir. 2004).

The entire system by which IBEW 18, the City Defendants, and JSTI jointly act to deprive employees like Deering of their First and Fourteenth Amendment rights occurs in Section 1157.12, which is a "practice, policy, or procedure that animates the constitutional violation at issue. *Hafer v. Melo*, 502 U.S. 21, 25 (1991), and sufficiently identifies the role played by the Attorney General in enabling the injuries to Deering's constitutional rights. The Attorney General's connection to the Plaintiffs' claims is more than "fairly direct," and his reliance on *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) for the proposition that the Attorney General can *only* be found to have sufficient enforcement authority based on supervision of district attorneys and city attorneys is inaccurate. On the contrary, the Court in that case specifically states that "[w]e

25

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

may affirm the district court's determination that the Attorney General is not entitled to Eleventh Amendment immunity on any sufficient ground." Supervision is sufficient, not necessary. Not only is it likely that the Attorney General will employ his supervisory powers against Deering's interests, *see Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992), he is here now in this Court doing that very thing by defending the constitutionality of Section 1157.12.

### C. State Law Cannot Restrict Section 1983 Liability for State Actors

The Defendants attempt to dissuade the Court from asserting jurisdiction over Deering's Section 1983 claims because they assert they were either "just following state law," or potentially broke some state law other than the one rendering them state actors in the first place. Neither assertion has merit.

First, regarding the City Defendants, it is entirely irrelevant that their conduct conforms with the letter of Section 1157.12. Section 1983 requires only that the official act "under color of state law," not in conformity or non-conformity with state law.  A police officer is cloaked with "color of law," even if he acts contrary to state law, or acts in conformity with state law and nevertheless violates a citizen's constitutional rights. In either case, the police officer may be liable for monetary damages because he is a person cloaked with the authority of the state. The officer may receive qualified immunity, and whether his employer is liable is also a different question. Section 1983 even authorizes injunctive relief against officials with 11th Amendment immunity that acted unconstitutionally, even if they are following the letter of the authority granted by the state. *See Young*, 209 U.S. at 123; *see also*

26

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

*Monroe v. Pape*, 365 U.S. 167, 171 (1961) (Section 1983 enforces provisions of the Fourteenth Amendment acting with state authority, "whether they act in accordance with their authority or misuse it."); *Atkins*, 487 U.S. at 49-50 ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."); *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999) (even illegal acts can be "authorized" where the defendants were "those persons who are assigned the duty of interpreting and enforcing the" law).

Second, IBEW 18 argues that if the source of the harm to Deering is IBEW 18's violation of a state statute, then IBEW 18, by definition, cannot be a state actor. By this logic, IBEW 18's alleged potential intentional misrepresentation violates state law and therefore IBEW 18 was not acting "under color of state law" when it deprived Deering of his constitutional rights. This argument has an obvious and basic flaw. The "color of state law" under which IBEW 18 is liable as a state actor is the law that permits the City Defendants to deduct dues from Deering's paycheck without obtaining authorization or consent, Section 1157.12. Intentional misrepresentation to a government official is an entirely different statute. *See, e.g.*, Cal. Pen. Code § 115. IBEW 18 acted under color of state law and did exactly what it was supposed to do in accordance with Section 1157.12, and other potential state law violations are irrelevant. IBEW 18 did not violate Section 1157.12, but rather acted directly pursuant to it. The proof of this is simple: if Section 1157.12 did not exist, or if procedural safeguards existed to ensure public employees' dues would

27

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1 | not be wrongfully taken, then IBEW 18's misrepresentation, on its own, would cause

2 | no harm to Deering's First and Fourteenth Amendment rights.

3 | Despite the Defendants repeated assertions to the contrary, there is no state or

4 | administrative exhaustion requirement for bringing Section 1983 claims alleging the

5 | violation of federal rights. *Heath v. Cleary*, 708 F.2d 1376, 1379 (9th Cir. 1983).

6 | This rule holds even given the "variety of claims, claimants, and state agencies

7 | involved," *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 515 (1982),

8 | including Section 1983 claims arising in the context of labor law, *see, e.g.*, *Air Line*

9 | *Pilots Ass'n v. Miller*, 523 U.S. 866, 869, 879 (1998); *Knight v. Kenai Peninsula*

10 | *Borough School District*, 131 F.3d 807, 816 (9th Cir. 1997); *Clark v. Yosemite Cmty.*

11 | *College Dist.*, 785 F.2d 781, 790 (9th Cir. 1986). Indeed, it would defeat the purpose

12 | of Section 1983 if "the assertion of a federal claim in a federal court must await an

13 | attempt to vindicate the same claim in a state court." *McNeese v. Board of Ed. for*

14 | *Community Unit School Dist.* 187, 373 U.S. 668, 672 (1963); *Monroe v. Pape*, 365

15 | U.S. 167, 183 (1961). Deering has actionable federal claims.

16 |

17 | **D. Deering Presents Live Controversies to Stop Continuing Deductions, and for Damages for Past Deductions**

18 | 1. Deering Has Standing.

19 | Under Article III, federal courts hear only live "cases" and "controversies."

20 | *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). In order to have standing

21 | to maintain an action in federal court, Article III requires a plaintiff have (1) a

22 | concrete and particularized invasion of a legal interest, (2) fairly traceable to the

28

23 | OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
24 | NO.: 2:21-CV-07447

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   challenged conduct of the defendant, and (3) likely to be redressed by a favorable

2   judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Deering

3   meets these all these requirements for both his First Amendment and Fourteenth

4   Amendment claims.

5       *a. Standing for First Amendment claims.*

6     First, forcing Deering to subsidize the political speech of IBEW 18 and JSTI,

7   through both the purported dues' deductions and deduction of fees for the jointly

8   operated trust, without either his contractual authorization or his affirmative consent,

9   is a direct injury to his First Amendment rights. *Janus*, 138 S. Ct. at 2464 ("[n]either

10  an agency fee *nor any other payment* to the union may be deducted from a

11  nonmember's wages, nor may any other attempt be made to collect such a payment,

12  unless the employee affirmatively consents to pay.") (emphasis added). The

13  Supreme Court intended *Janus* to protect against the precise constitutional injury

14  suffered by Deering. As the Court notes, "[w]hen speech is compelled…individuals

15  are coerced into betraying their convictions. Forcing free and independent

16  individuals to endorse ideas they find objectionable is always demeaning." *Id.* This

17  is the exact injury suffered by Deering.[3]

18    Second, the direct injury to Deering's First Amendment rights is directly

19  traceable to the joint conduct of the Defendants to take Deering's lawfully earned

20

21  _____

[3] First Amendment cases also raise "unique standing considerations," *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003), that "tilt[ ] dramatically toward a finding of standing," *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). Under this "lowered threshold for establishing standing," *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010), an individual deprived of the free speech rights are "permitted to challenge a statute on its face because it also threatens others not before the court," *Hunt v. City of Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011).

23  OPPOSITION TO DEFENDANTS'
    MOTIONS TO DISMISS
24  NO.: 2:21-CV-07447

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

wages without his contractual authorization or affirmative consent for use by IBEW 18 and JSTI on political speech. But for the force provided by state law and the jointly negotiated MOU, IBEW 18 and JSTI would have no claim whatsoever to a single penny of Deering's lawfully earned wages. This is true for the supposed dues they took from him after he withdrew authorization under the terms of his agreement in August 2020, and it is especially true for the money taken for JSTI, which was never authorized by Deering in any way, shape, or form. Working hand in hand under the authority provided by state law and the MOU, and without either Deering's affirmative consent or contractual authorization, the Defendants directly caused the deprivation of his First Amendment right against compelled speech.

Last, a favorable judicial decision *will* redress the constitutional injuries suffered by Deering. Deering's request for compensatory damages for the amount of money taken by the Defendant's without his contractual authorization or affirmative consent, compensatory damages for the violation of his constitutional rights, and nominal damages, are precisely tuned to redress the invasion of his legal interest to be free of the compelled subsidy for objectionable political speech by IBEW 18 and JSTI.[4] Deering's claims for compensatory and nominal damages represent a "personal stake in the outcome" in the resolution of the claims that is sufficient to meet the requirements for redressability requirement of Article III

---

[4] Such a request for nominal damages to redress a past constitutional injury has deep roots in the common law, *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986); *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005); *see also* Maura B. Grealish, *A Dollar for Your Thoughts: Determining Whether Nominal Damages Prevent an Otherwise Moot Case from Being an Advisory Opinion*, 87 Fordham L. Rev. 733, 739 (2018) (nominal damages serve special function to vindicate rights deprivations).

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    standing. *See Baker v. Carr*, 369 U.S. 186, 204 (1962). The same is true of his

2    pending request for prospective relief to end the unauthorized and unconsented

3    deductions by the City Defendants and IBEW 18 to subsidize JSTI's political

4    speech. Judicial relief on Deering's First Amendment claims are appropriate.

5               *b.  Standing for Fourteenth Amendment claims.*

6            The same analysis is applicable to both Deering's procedural and substantive

7    due process claims, for which he has standing to proceed. In order to invoke the due

8    process protections of the Fourteenth Amendment, there must be a "deprivation of

9    interests encompassed by the Fourteenth Amendment's protection of liberty and

10   property." *Bd. Of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Soranno's Gasco, Inc.

11   v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).[5] Both are implicated by the state

12   system challenged by Deering under Section 1983. *See Cantwell v. State of

13   Connecticut*, 310 U.S. 296, 303 (1940) ("The fundamental concept of liberty

14   embodied in [the Fourteenth Amendment] embraces the liberties guaranteed by the

15   First Amendment."); *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 398

16   (2000) (Stevens, J., concurring) ("Money is property…."; *Sniadach v. Family

17   Finance Corp.*, 395 U.S. 337, 342 (1969) (Harlan, J., concurring) (same); *Orloff v.

18   Cleland*, 708 F.2d 372, 378 (9th Cir. 1983) (citing *Sniadach*, 395 U.S. at 342) ("It is

19   obvious that [individuals have] a property interest in [their] salary.").

20

21

22   ───────────────
     [5] The requirement of a deprivation applies to both procedural due process, *Ingraham v. Wright*, 430 U.S. 651, 672
     (1977), and its substantive counterpart, *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004).

23                                                          31

     OPPOSITION TO DEFENDANTS'
24   MOTIONS TO DISMISS
     NO.: 2:21-CV-07447

First, the Fourteenth Amendment requires the provision of adequate procedures *before* an individual is deprived of life, liberty, or property. *Ingraham*, 430 U.S. at 672; *Carey v. Piphus*, 435 U.S. 247, 259 (1978); *Fuentes v. Shevin*, 407 U.S. 67, 81(1972) (constitutionally adequate procedures "minimize substantively unfair or mistaken deprivations."). Unlike cases like *Crouthamel v. Walla Walla Pub. Sch.*, 535 F. Supp. 3d 1025, 1035-36 (E.D. Wash. 2021), there are no contractual terms in Deering's case that would have negated an alleged deprivation. The basic procedural due process requirements are notice of the deprivation, an opportunity to contest the deprivation, and access to an impartial decision-maker. Disqualifying bias is most plainly evident where, as here, the decision-maker has a "substantial pecuniary interest" in the result. *See, e.g., Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). Relatedly, *Janus* provides that unions and their state allies cannot even *attempt* to take the lawfully earned wages of employees unless the employees first affirmatively consent. *Janus*,138 S. Ct. at 2486.

The Defendants' actions here fail each standard. Though there are circumstances in which adequate post-deprivation procedures available through the actual deprivation scheme satisfy the Fourteenth Amendment's procedural requirements, *see, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984), in this case Deering was provided with *no procedures* to contest the taking of his lawfully earned wages without contractual authorization or affirmative consent, either prior to or after the alleged deprivations. The Fourteenth Amendment requires something *more than nothing*. An adequate system must prevent "the risk that dissenters' funds may

32

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

be used [even] temporarily for an improper purpose." *Chicago Tchrs. Union, Loc. No. 1, v. Hudson*, 475 U.S. 292, 305 (1986). When the Defendants acted under state law to take Deering's lawfully earned wages without providing any of the requirements of procedural due process, a system unopposed and thus sanctioned by the Attorney General, his rights to procedural due process were directly injured. This injury is redressable by Deering's requests for compensatory and nominal damages, and prospective relief to end the continuing JSTI deductions.

Second, the substantive component of the Due Process Clause "prohibits restraints on liberty that are arbitrary and purposeless." *Sagana v. Tenorio*, 384 F.3d 731, 742 (9th Cir. 2004). Substantive due process thus "bar[s] certain government actions regardless of the fairness of the procedures used to implement them…" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Infringements of substantive due process rights are subject to strict constitutional scrutiny and must be narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg*, 521 U.S.702, 720 (1997); *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). Parties alleging substantive due process violations can show that the challenged government conduct violates their rights because the government conduct can interfere with rights "implicit in the concept of ordered liberty," *United States v. Salerno*, 481 U.S. 739, 746 (1987); the government conduct "shocks the conscience," *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec*., 908 F.3d 476, 518 (9th Cir. 2018); or the conduct can "offends the community's sense of fair play and decency." *Id.*

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    Here, the Defendants' arbitrary actions fail any and all of these standards.

2   Contrary to the City Defendants' assertions, the source of Deering's alleged harm

3   here is the inherently arbitrary system under which his First Amendment rights are

4   burdened, not his First Amendment rights themselves. Unions may be in an ideal

5   position to gather and maintain information as to employee authorizations, but as an

6   inherently interested party, they are also in the ideal position to abuse this state-

7   imbued power. The City Defendants took Deering's lawfully earned wages,

8   representing both his liberty and property interests, and gave the moeny to IBEW 18

9   and JSTI, which spent it on political speech without his contractual authorization,

10  affirmative consent, and over his express objections. This was a substantive due

11  process violation in every sense of the concept. *See Moore v. East Cleveland*, 431

12  U.S. 494, 503 (1977) (appropriate limits on substantive due process come not from

13  drawing arbitrary lines but from careful "respect for the teachings of history (and),

14  solid recognition of the basic values that underlie our society"). Again, this injury is

15  redressable by Deering's requests for compensatory and nominal damages, and

16  prospective relief to end the continuing JSTI deductions.

17      2. Deering's Claims Are Not Moot.

18      Under Article III, "an actual controversy must exist not only at the time the

19  complaint is filed, but through all stages of the litigation." *Kingdomware Techs., Inc.*

20  *v. United States*, 136 S. Ct. 1969, 1975 (2016). No intervening circumstance has

21  deprived Deering of a personal stake in his lawsuit, and his constitutional injuries

22  continue with every unauthorized deduction.

23
OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

24

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1              *a.  Retrospective claims are live.*

2        A monetary refund *after the fact*, commonly employed by public employee

3   unions to avoid what they consider to be inconvenient litigation over employees'

4   First Amendment rights, *see, e.g.*, *Laird v. ULTA*., No. 2:21-cv-02313 (C.D. Cal.

5   filed March 16, 2021); *Few v. UTLA*, No. 218CV09531JLSDFM, 2020 WL 633598,

6   at *5 (C.D. Cal. Feb. 10, 2020); *Jackson v. Napolitano*, No. 19CV1427- LAB

7   (AHG), 2020 WL 5709284, at *5 (S.D. Cal. Sept. 23, 2020); *Durst v. Oregon Educ.*

8   *Ass'n*, 450 F. Supp. 3d 1085, 1088 (D. Or. 2020), has *not* been offered to Deering

9   by the Defendants in this case. Even if it had, Deering would still be entitled to the

10  additional compensatory and nominal damages requested in his complaint. *Genesis*

11  *Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013) ("[U]nlike claims for

12  injunctive relief challenging ongoing conduct, a claim for damages cannot evade

13  review; it remains live until it is settled, judicially resolved, or barred…."); *Friends*

14  *of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 197 (2000)

15  (Stevens, J., concurring) ("There is no precedent…that provides any support for the

16  suggestion that post-complaint factual developments that might moot a claim for

17  injunctive or declaratory relief could [] moot a claim for monetary relief….").

18       Deering's request for compensatory damages for the money taken by the

19  Defendants without his contractual authorization or affirmative consent, and the

20  compensatory and nominal damages claims for the violation of his First and

21  Fourteenth Amendment rights remain live and capable of judicial redress. *See, e.g.*,

22  *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701,

23                                   35

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

24

720 (2007) (plaintiff "sought damages in her complaint, which is sufficient to preserve our ability to consider the question"); *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (suggesting that a "continuing controversy over damages" would mean that the case was not moot). In particular, a person deprived of a constitutional right "may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). And while nominal damages provide a real form of judicial relief akin to declaratory judgment which "affects the behavior of the defendant towards the plaintiff" through a judicial acknowledgement of a constitutional deprivation, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798, 801-802 (2021), they do not provide any actual monetary compensation. As such, Deering can recover nominal damages from all the Defendants, including the Attorney General. *Moore v. Liszewski*, 838 F.3d 877, 879 (7th Cir. 2016) ("[N]ominal damages is not a small rather than a large damages award; functionally it is no damages award at all.").

### b. Prospective claims are live.

While the Defendants may be correct that Deering's claims for prospective relief regarding the continued deduction of purported dues from his lawfully earned wages are likely moot due to the fact that he is no longer a member of IBEW 18, is unlikely to rejoin in the future, and is no longer having dues deducted, this has no impact on the *continued* unauthorized and unconsented to $15.00 deductions from his pay for JSTI's objectionable political speech. Not only can this Court provide Deering prospective relief for this continuing violation of his First Amendment

36

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

rights, but it should provide it. There is no doubt Deering *will* suffer injury to his First Amendment rights against compelled speech due to the continuing deductions from his lawfully earned wages to fund JSTI's political speech, which are occurring without his contractual authorization or affirmative consent.[6] There is no indication whatsoever from the Defendants that these deductions will cease. The Court's prospective intervention here would mean only that the Defendants would be required to verify that individuals whose money they are taking for use in political speech have actually contractually authorized or affirmatively consented for them to do so. In other words: compliance with the Constitution.

## CONCLUSION

"[T]he First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay." *Janus*, 138 S. Ct. at 2467. The motions to dismiss in this case represent yet another coordinated effort by union defendants and their partners in government to prevent judicial review of serious First Amendment compelled speech and due process issues. For every Christopher Deering, there are likely *dozens* of other public employees being denied their constitutional rights who will never be able to afford to hire attorneys to take the Defendants to court, seemingly the only means available to spur those unions to

---

[6] Additionally, several exceptions to mootness apply to Deering's request for prospective relief regarding the deduction of purported dues, including being "capable of repetition yet evading review," *see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010), "voluntary cessation," *see Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir. 1985), and potential class certification, *see ABS Entertainment, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) (motions to certify class cannot be restricted to specific time).

37

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

any action or acknowledgment of their injurious actions or prevent this state-created system from compelling support for objectionable speech.

Much as they desire to do so, the Defendants cannot deny Deering his access to justice through this tribunal. The deprivation of the Deering's First Amendment rights against compelled speech goes to the heart of why the state's statutory scheme is inherently arbitrary:  the Defendants can use the power of state statutes to compel Deering to support political speech against his will, they can coerce him into betraying his convictions and demean his status as free and independent individual. Without the intervention of this Court, the First Amendment and *Janus* case will be rendered dead letters. The Defendants' motions to dismiss should be denied.

Date: March 7, 2022                    Respectfully submitted,

Timothy Snowball, Cal Bar No. 317379
tsnowball@freedomfoundation.com
Shella Alcabes, Cal Bar No. 267551
salcabes@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482
Facsimile: (360) 352-1874

*Attorneys for Plaintiff*

OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS
NO.: 2:21-CV-07447

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874